Good morning, your honors. May it please the court, my name is Michael Kimberly and I represent the appellant. Your honors, neither this court nor the Supreme Court has ever invalidated an arbitration provision under the Effective Vindication Doctrine and I submit this is not the first case for doing so. Under that doctrine, this case presents, as I see it, two questions. The first is, by waiving the right to litigate claims on a plan-wide basis, does the clause waive a substantive right under ERISA? That's the first question. The second question is, by requiring individual-only relief, does the clause foreclose a substantive remedy that would be available to a claimant in court rather than before an arbitrator under the terms of this agreement? The answer to both questions is no, and I'll start with the first question. On that front, I think it helps to start with definitions. So a right is substantive when it relates to the rules that define a plaintiff's entitlement to relief and a defendant's obligation to remediate or prevent harm. It's procedural, in contrast, when it relates to the manner in which such a right is litigated in court. And I think the Supreme Court's recent decision in Viking River Cruises demonstrates how the Court should go about thinking about that distinction in this particular context. There, the Supreme Court said that the right to bring a representative action is procedural in the sense that I mean it if it exhibits the procedural characteristics and entails the procedural protections of a classic Rule 23 class action, which is likely to be the case when the claim has the practical effect of binding non-party plan participants with respect to their individual claims and individual accounts. And that is surely this case. I'll explain why in a minute before noting that the Court there said that the right to bring a representative action is just a single principle. So this isn't a group or an amalgamation of multiple individual claims. It's one person representing a principle like a key TAM action. To foreclose that kind of representative action essentially forecloses the cause of action entirely. Now we know after LaRue that participants in defined contribution plans like the one that we have here have a right to recover with respect to their individual accounts. So any right under ERISA then to proceed on a plan-wide basis seeking financial recovery for participants in a defined contribution plan is really an effort to recover on behalf of multitudinous non-party plan participants. And that concerns only the manner in which the claim is being litigated. It doesn't affect the scope of the plaintiff's or claimant's entitlement to relief. It doesn't affect the scope or shape or standards for determining the defendant's liability to pay. And I think a simple example proves the point. You can imagine a plan with a hundred different participants. Let's say these hundred participants prove each $1,000 worth of harm to their individual accounts in light of a breach of fiduciary duty. Those claims can be litigated one by one or they can be litigated on a plan-wide basis if this were in court without the provision that we have here. It can be litigated on a plan-wide basis. The recovery is the same in both cases. The recovery by the plaintiff is the same in both cases. The liability to pay by the defendant is the same in both cases. The only difference between those two scenarios is the manner in which the claim is litigated. That makes it procedural. I would add this was the Seventh Circuit's determination in the Smith case. There is nothing incompatible, Smith tells us, between ERISA on the one hand and individualized arbitrations in a defined contribution case on the other hand. So that answers the first question. And that then brings me to the second question that's before the court, which is whether there is anything in the terms of this agreement that forecloses substantive remedy that would be available in court but is not available under this arbitration clause. I think that probably the best starting point for that is the language of Section 409. Section 409 has three clauses relevant here. It says that when a fiduciary breaches a fiduciary duty, and this is reproduced on the court, the three clauses specify that the fiduciary is personally liable to make good to the plan any damages caused. So that's a requirement to furnish damages. The second clause says that the fiduciary must restore to such plan any profits that he gained from misuse of the plan's property. That's a return of ill-gotten gains. The third is that he'll be subject to other equitable and remedial relief that the court may deem appropriate, including removal of such fiduciary. Now, I'd ask the court to compare those three clauses to the three Romanet clauses that appear in the arbitration agreement here. This is on record page 173. It's also reproduced on page 9 of the red brief. Romanet 1 in the clause says that claimants proceeding in arbitration are entitled to receive, quote, the alleged losses to the claimant's individual plan account resulting from the alleged breach of fiduciary duty. That's the first clause in Section 409, so you can check that off. The second offers to the individual claimant proceeding in arbitration a prorated portion of any profits allegedly made by the fiduciary for misuse of the property. That's the second clause in Section 409, so you can check that off. The third Romanet, again, this is in the middle of Section A2B of the plan document, says that the individual claimant proceeding in arbitration may obtain, quote, such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits, and benefits here means money, this is about retirement benefits, or monetary relief to any person other than the claimant. So all this is foreclosing is obtaining monetary relief or additional benefits for non-party plan participants. It does not foreclose the removal of a trustee, which I would say in any event is a red herring in this case, because at no time after adoption of the plan amendment that's here at issue, was there a trustee to remove. So that remedy would not have been available to the claimants that they proceeded in court rather than arbitration no matter what, and that's true entirely apart from what this provision may say. But in all events, even if removal of trustee were a basis, excuse me, were available to the claimants in this case, which it is not, it would be available we submit in arbitration. Your Honors, there are three other equitable remedies that my friends on the other side have asserted here, and our position is that each of these also is available in individual arbitration. The first is very easy to dispense with, that's surcharge. The equitable remedy of surcharge is money. That's easy to dole out claimant by claimant. The next is an equitable lien. There's no reason to think, first as a starting point, I think this Court in Perez has cast doubt on whether these types of money only remedies are actually available under 409, as recognizing that they are available tends to render the first clause of 409 redundant. But set that aside, assuming equitable lien and constructive trust are available under Section 409, there's no reason to think that they can't be granted on an individual by individual basis. And finally, rescission is also available. Rescission takes a number of forms, one of which sort of classically as you think about it is unwinding a transaction. That also is not possible here. But even setting that aside, another form that it takes is rescissory damages. The distinction between unwinding a transaction and granting the financial equivalent of doing that transaction is the same, is a distinction in how this remedy is enforced. That is a procedural distinction, it is not a substantive one. The point is an arbitrator would have the power to grant rescission and he could do it on a claimant by claimant basis. So there is overall nothing inconsistent with this provision, which requires individual arbitrations and anything that either ERISA makes available as a substantive remedy in court or in terms of proceeding on an individual basis rather than a plain white basis. I understand that there may be two cases in which the Supreme Court has denied certiorari that have nearly identical arbitration clauses. Both of those cases, the Seventh and Tenth Circuit, the PSC Ventures Holding and the Harrison v. Envision Management Holding. Discuss that possible circuit split. Certainly, Your Honor. So I think each of those courts recognized the same dichotomy that I put before this Court, that there are really two questions here. On the first question, the Seventh Circuit sided with us. It agreed that there is nothing inconsistent categorically with pursuing individual arbitrations and anything that ERISA provides or specifies. The Tenth Circuit split with the Seventh Circuit on that question and found, as did the District Court in this case, that there is an incompatibility. But as I've just laid out, the distinction between proceeding individually and proceeding on a plain white basis is a distinction in procedure. And what the Supreme Court time and time again, most recently in Viking River Cruises, tells us is that an arbitration provision is an agreement not just to submit a claim to an arbitrator, the sort of simpler and less formal form of an arbitrator, but it also includes any of the procedural mechanisms that the parties adopt for that arbitration. So if I'm right and the Seventh Circuit is right that that is a distinction in procedure, then there is nothing incompatible with the Supreme Court's cases or ERISA in waiving a plan-wide cause of action. On the second question, the Seventh Circuit disagreed with us, but it disagreed with us in two ways that I think make its reasoning inapplicable here. First, it did not discuss the three Romanets in the middle of the paragraph that I just described to you. And I would admit that those make clear, those are really the lens through which you have to read the remainder of the provision. But I think fundamentally and even more importantly, this case is just factually different. As I said, so the Seventh Circuit hung its hat entirely on the removal of the trustee. And what the court there said is, the way we read this language, we don't think an individual proceeding an arbitration could obtain an order removing a trustee. But in that case, there was a trustee who could be removed. So it was actually a remedy that ERISA made available and that the claimants could have obtained in court had they proceeded in court as eventually they did. Here, that isn't the case. So just as a factual distinction, I think it suffices to say that that is not a remedy that ERISA makes available that is foreclosed by this provision, because as a matter of fact, there's just not a trustee and never has been during the, since the effective date of this amendment, never has been a trustee to remove. You know, the benefit there too, I think Judge Barksdale of basing a decision in our favor on that ground, is it's a factual distinction. This is not creating a circuit split. You don't have to disagree necessarily with the Seventh Circuit's reasoning. We do think the Seventh Circuit got it wrong, but I think it's an easy and straightforward matter just to say, look, the facts here are different and these different facts produce a different outcome. All right, Counselor. Thank you. Good morning, Your Honors. May it please the Court. John Stokes for the Appellees. Three circuits have looked at this exact arbitration clause and reached the same conclusion. The clause is invalid because it is non-severable and it eliminates remedies that ERISA authorizes. And that really is the heart of our argument. It's the heart of the prospective waiver doctrine. To be very clear, we have no problem with an arbitration clause, nor do we have any problem with a class waiver. Our claims here have nothing to do with, our arguments here have nothing to do with the waiver of class procedures, with the waiver of any ability to aggregate claims. Each of the three circuits that has looked at this arbitration clause has recognized that the problem is not with any kind of class waiver. The problem is with eliminating the remedies that the statute authorizes, which is exactly what this arbitration clause does. And I'll start with 1109 and the monetary restitution piece of this. Because I think on that issue, this Court doesn't actually have, and by this Court I mean Your Honors, this panel, doesn't have any new ground to tread. The Fifth Circuit in Perez v. Brewster has already recognized that a single ERISA plaintiff under 1132a2 in an ESOP case may seek and recover the entire loss on behalf of the plaintiff. And the defendants in that case, I pulled the briefs, they made the exact argument that you just heard, that an individual plaintiff can't just, standing on their own, go out and recover the whole loss on behalf of the ESOP. They said that after LaRue, the way that it works is that recovery is limited to your individual account. That was the argument, not just that you heard now and in their briefs, but that was the argument that was before this Court in Brewster. And what this Court said is that it was appropriate for a single plaintiff to seek a plan remedy for alleged breaches of duty to the ESOP as a whole. And the Court also made clear in that case that the loss to the plan is the amount that the ESOP as a whole overpaid. It's on all fours with our case. Now, the Court also recognized that you may need to have some procedural safeguards to make sure that, in essence, that the representative plaintiff is not proceeding kind of in a selfish way to benefit themselves at the expense of the plan. And by plan, that means entity. That means the plan as an entity. But the Court recognized that there is no need to proceed on a class basis and that the single individual plaintiff can recover the entire loss. And I will note that one of the factors, one of the reasons that the Court didn't have any concern in Brewster about this being a situation where an individual plaintiff could present some kind of, you know, selfishly, self-interested prosecution of the case is because the Secretary had a companion case. And I'll note that in our case as well, the Secretary isn't just here before you today. The Secretary also has a relationship with Perez. A single ERISA plaintiff can recover the entire loss in court. And that dovetails exactly with what the Third Circuit held in Henry and what the Tenth Circuit held in Harrison. And I'd like to come back and also mention what Smith held or didn't hold on this exact issue. In Henry, just to be very clear, the Third Circuit, and this limit restitution to the plaintiff's losses. It permits recovery of all planned losses caused by a fiduciary breach. And that was quoting Justice Thomas' concurrence in LaRue. Harrison held the same thing at, and Harrison is the Tenth Circuit decision, at 112 and to Note 8. And so you have the two circuits that have actually addressed that issue agree with us and agree with this court's decision in Perez. Now a word about Smith, the Seventh Circuit decision. The Seventh Circuit absolutely did not hold that a plaintiff's monetary recovery is limited to the amount that's in their individual account. Where they cited LaRue is in a paragraph that talks about the problem not being with the class waiver, but being with the limitation on remedies. It said nothing whatsoever about the monetary relief that would be available to a plaintiff in arbitration or litigation under 1109. The court rested its holding entirely on fiduciary removal. And we know that the court was not, in Smith, the Seventh Circuit case, was not saying anything about the extent of the monetary relief available. Because its very next sentence after citing LaRue was this. The bottom line is that our holding turns on the impermissible relief, not the chosen vehicle. The Seventh Circuit was not agreeing with my friend's side of the issue here. No court, no court of appeals has agreed with that side of the issue, nor has this court. So just to make it, I think, very, very clear, for this court to rule to overturn the district court's decision, it would have to create a circuit split. And it would have to contravene this court's precedence in Brewster. That's the monetary relief piece of this. And again, because this clause is non-severable, that can be the end of the story. Because the clause is non-severable, any problem with it causes the whole thing to fall. I do want to say a word about equitable remedies. Because, and they did the same thing in their case, they created an important piece of the arbitration clause that limits the extent of the equitable remedies. It's not just that it cannot provide monetary relief to other participants. It goes on to say that the remedy must, quote, not be binding on the planned administrator or trustee with respect to any employee, participant, or beneficiary other than the claimant. Any equitable relief must not be binding beyond this case. And that imposes severe limitations on the relief that is available, that would be available in arbitration, which make this clause invalid and impermissible. And I will start with rescission, where I think I heard my friend agree that rescission as such, unwinding of the transaction so that we can get our stock back, right, that might be a real remedy that we want in this case. And that this court, again in Presby-Brewster, recognized as a remedy that may be appropriate in certain cases. What if the stock has gone up four times in value since it was sold? We are entitled to pursue getting the stock back. But we cannot do that under this arbitration clause. And I think they have two main responses to that. The first is that, well, this is kind of a long-shot remedy. It's not awarded frequently. I think there's, they say that there's no Fifth Circuit case that's held it. It has been approved in the Tenth Circuit, a case called Eves v. Penn. And I think that they're basically saying, this is the tail wagging the dog. This is not a really important remedy. It's a long-shot remedy. So you shouldn't worry about it, essentially. But, again, this clause is non-severable. And that's the problem. If any remedy that we would be able to pursue in court we cannot pursue in arbitration, the whole thing falls. They don't get to make a tail wagging the dog point when they are the ones who chose to make this clause non-severable. So I think that kind of deals with that aspect of it. Their other response, which you heard about a few minutes ago, is that, well, you can get something that's like rescission, that's like getting your stock back, because you can get rescissory damages, which is one form that this type of remedy can take. But, again, I think that that misses the point fundamentally. The rescission that we're entitled to pursue in court is not limited to rescissory damages. But I think he agrees that that's the only type of rescission that could possibly be available in arbitration. And, again, that makes this clause invalid because we have to be able to pursue in arbitration the remedies that we could pursue in court. A quick word about fiduciary removal and appointment. This plan is terminated. There is no fiduciary to remove right now. But the Seventh Circuit recognized that along with removal under 1109 is the concept of appointing an independent fiduciary. And that remains a very important piece of the puzzle here. When you have a terminated plan, the way that it works is, if there's a recovery at the end of the case, it cannot go directly back to the individual plaintiff, because this is a representative claim. It's a claim brought on behalf of the plan. The money must go back into a plan of some kind. Now, there are many ways that this can work, as I understand it. When you have a terminated plan, you could resuscitate the plan. You could have what's called a successor plan. You can even have something that looks basically like individual managed IRAs that are established for the participants when there's a recovery. But the common thread for all of them is that, by law, they must have a trustee. They must have a fiduciary. And our point is we don't want Mr. Brosen to be our trustee on the other side. We will need an independent fiduciary appointed. And ERISA requires uniform plan administration. That means you can't have in one arbitration one independent trustee appointed to do something with respect to that recovery for the plan. And then in another individual arbitration, another separate trustee appointed. There can be one trustee. I mean, you could theoretically have more than one person doing it, but it has to be uniform across the plan. And so that remains important, and it remains unavailable. And I just want to be very clear that the Seven Circuits holding was not just about removal. It was also about appointment of an independent fiduciary, which the Court recognized cannot but be binding beyond the individual claimant, and thus is unavailable under this clause. Address the relevance of Viking River cruises. It's a statutory case, California case, and the efficacy of that statute in relation to the Arbitration Act. Different set of facts, but how would you say it fits or doesn't here? I think that Viking River is an important precedent here. I think at some level you could avoid it by just looking at the remedies, because I think remedies are clearly substantive, and so that would be enough for this clause to fall. So I don't think that you necessarily have to address it, but it is on point for an important issue here. And that goes to the very nature of the claim that we are trying to bring. Every claim that is brought under 1132A2, both before LaRue and after LaRue, is brought in a representative capacity on a non-representative basis. There is no such thing as a non-representative claim under A2, period. All claims under A2 are necessarily and inherently representative. And that — and what the individual plaintiff is representing is the plan as an entity. Case after case says this. LaRue says this. This Court's precedents have said it at least four times, both before and after LaRue. You're not talking about aggregating a bunch of individual people's claims. You're talking about pursuing a claim on behalf of the plan, which is an entity. And that makes this case very much like the single-agent, single-principle, non-class representative actions that Justice Alito's opinion for the court in Viking River explained are substantive. And one of the examples that I think is a helpful analog here is the shareholder derivative action. That, in many ways, is — in many people, it's a more familiar form of action than an A2 claim on behalf of a plan. But it's — in substance, it's the same thing. You have an individual shareholder who is suing on behalf of the corporation. Now, of course, the individual shareholder isn't the only shareholder in most circumstances. There will be other shareholders who are affected. But the individual shareholder is not representing the other shareholders. The individual shareholder is representing the corporation in the suit. It's the same thing here. You have an individual ERISA participant representing the plan. And I do think my friend identified what makes these things substantive. I agree with this much. It's substantive because if you eliminate the representative nature of the claim, you eliminate the claim altogether. So, again, the shareholder context, I think, is instructive. If you were going to try to say, you cannot bring a derivative claim in a representative capacity, period, well, there would be no derivative claim to bring because the derivative claim only exists to be brought on behalf of the corporation. Same thing here. If you cannot bring an A2 claim on behalf of the plan, then you cannot bring an A2 claim. And that is a final reason why this clause is invalid. It says right in the arbitration clause, the first sentence, that all covered claims must be brought solely in the claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. So the clause prevents us from suing on behalf of the plan, which is an independent reason why it is invalid. So we would ask this Court to affirm, based on the decisions of this Court and in accordance with all of the other circuits that have addressed this issue. Thank you. Right. Thank you. We'll hear from the Department of Labor. Your Honor, Daniel Colbert on behalf of the Secretary of Labor. May it please the Court. As three circuit courts have considered this issue have all held, an agreement that precludes the plan-wide remedy that ERISA Section 409 makes available is an unenforceable prospective waiver. I'd like to talk a little bit about Viking River. Viking River, the one thing it says clearly is that one agent, one principal representative actions form the basic architecture of much of substantive law. They are distinct from claims joined to procedures such as class actions, and therefore they cannot be waived. Now the question is, is an ERISA 50282 Section 50282 claim a similar one agent, one principal representative action? And I think LaRue says conclusively that it is. I'd like to talk about LaRue in some detail because I think defendants get it exactly backwards. LaRue does not hold that in a defined contribution plan a 50282 action is an individualized action. On the contrary, it says that it is always an action on behalf of the plan. In LaRue, you had a single plaintiff who had suffered a loss to his account only. And so LaRue starts from the point of view that says, okay, we know that a participant can bring a claim on behalf of the entire plan. Can they also bring a claim when their account was the only one that was injured? And LaRue holds, yes, they could, but it gets there by saying that it can do that, that a participant can do that because the assets in their account are plan assets. You're still bringing a representative claim on behalf of the plan. You're just recovering only the assets in your individual account because they are plan assets. And I would point you all to Justice Thomas' concurrence, which I think says exactly that. It says it very clearly. And I could read from it. It says clearly that the allocation of a plan's assets to individual accounts for bookkeeping purposes does not change the fact that all the assets in the plan remain plan assets. And to go back to the majority opinion, I'll just read to you from LaRue's holding. This is the second to last sentence of LaRue. It says that although Section 50282 does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. So far from saying that a 50282 claim can be brought in an individual capacity, LaRue says the opposite. It says that it is always a representative action in which a single agent, the participant, stands in for a single principal, the plan. That puts it within the substantive category in Viking River, and that really resolves the case before us here. That means that it is a substantive right that cannot be waived. So in the end, I think that this is a simple case. I would point you to the language in Smith. The Seventh Circuit, I think, said it very pithily when it said that what the statute permits, the plan precludes. That is the case before us today, and there's really not much else for this Court to do. So we would ask for this Court to affirm. All right, Counselor. Thank you. I'm happy to take any questions. Thank you. Thank you, Your Honors. A few brief follow-up points. I hope to be able to return some time to you as well. The first is, it sounds to me like my friends on the other side really are elevating form over substance in how they're describing the claim at issue here. LaRue is very clear. LaRue was dealing with a prior decision in Russell, which had said that these sorts of claims can only be brought on behalf of the entire plan. And LaRue said, and I'll quote briefly, our references to the entire plan in Russell are beside the point in the defined contribution context. The entire plan language from Russell appears nowhere in Section 409 or 502A2 and does not apply to defined contribution plans. So Russell was a defined benefit plan, and there was no way to separate out individual entitlements to relief. In the defined contribution plan, everybody's got their own account. And what Russell does not apply, and that individual participants can litigate claimant by claimant, account by account. Now, I agree with my friends on the other side that LaRue does not say individual litigation is mandatory. We don't disagree that in the absence of an arbitration clause like the one that we have here, that an individual could go to court and assert representation of the entire plan. The question is whether that right is procedural or substantive, and that's a point that my friends on the other side keep alighting, right? If you can litigate individually, on the one hand, and break a plan up into individual claims by individual litigants, or you can litigate it as a whole, that is a distinction in procedure. It is not a distinction in substance. The liability at the end of the day is the same. The entitlement to recover at the end of the day is the same. The only difference is how the case is litigated. And that means under cases like Viking River and others that preceded it, that what is going on here is a waiver of a procedural right which is permissible under the Federal Arbitration Act. And if we're right about that, then really the question just becomes whether any remedies are foreclosed. And on that front, I'm happy to stand on what I explained before. You can't assert entitlement to relief that is factually foreclosed in the case. And so I would suggest that the best way to distinguish Smith and other cases like it, including Harrison, is simply to say that the facts here are different. And under these facts, the Arbitration Clause is enforceable, and we'd ask the Court to reverse. All right, Counselor. Thanks to you and those on the other side for illuminating this case for us. We are in recess until tomorrow at 9 a.m.